**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

|  |  |
|---|---|
| KRISTEN GARDNER HUNTER, as Executrix of the Estate of RANDALL DON HUNTER, Deceased, as Surviving Spouse of RANDALL DON HUNTER, as Guardian of M.S.H., a minor, and as Guardian of M.B.H., a minor, | |
| Plaintiff, | CIVIL ACTION NO.: 4:19-cv-174 |
| v. | |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

**O R D E R**

This case emerges out of a tragic airplane crash that killed pilot Randall Don Hunter ("Decedent"). (See generally doc. 89.)  Plaintiff Kristen Gardner Hunter brings this action as Executrix of Decedent's estate, as Decedent's Surviving Spouse, and as the guardian of Decedent's two minor children, M.S.H. and M.B.H.  (Id. at p. 3.)  Plaintiff sued the United States of America ("Defendant") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2671, *et seq*.  (Id.)  Before the Court is Defendant's partial Motion to Dismiss, in which Defendant argues that certain claims raised by Plaintiff are barred by sovereign immunity and that this Court consequently lacks subject matter jurisdiction over those claims.  (Doc. 235.)  Plaintiff has filed a Response, (doc. 253), and Defendant has filed a Reply, (doc. 275).  After careful consideration of the parties' arguments, the Court **GRANTS** Defendant's Motion.  (Doc. 235.)

**BACKGROUND**

Plaintiff alleges the following in her Amended Complaint.  (See doc. 89.)  On August 28, 2017, an aircraft piloted by Decedent departed from the Savannah/Hilton Head International Airport on a flight to Atlanta, Georgia.  (Id. at p. 8.)  Approximately five minutes after takeoff, Decedent declared an emergency and informed the Savannah Air Traffic Control Tower ("SAV ATCT") that the aircraft was experiencing total engine failure.  (Id.)  The air traffic controller on duty provided Decedent with two options for landing: either return to the Savannah Airport or attempt to glide towards an airport in Statesboro, Georgia.  (Id.)  Decedent informed air traffic control that he would not make it to the Savannah Airport and would instead attempt to land at the airport in Statesboro.  (Id. at p. 9.)

Flying towards Statesboro required Decedent to turn the aircraft mid-air, resulting in a significant loss of speed and altitude which substantially reduced the aircraft's glide range.  (Id.)  As the aircraft continued to lose altitude, Decedent contacted SAV ATCT to ask how far it was to Statesboro and was told that the airport was 20 miles away.  (Id. at pp. 9–10.)  Decedent informed the controller that the failing aircraft, which was continuing to lose speed and altitude, would likely not make the 20-mile flight to Statesboro.  (Id.)

Almost a full minute after the emergency was declared, the controller provided Decedent with a much closer option for landing—the Cypress Lakes Airport in Bloomingdale, Georgia.  (Id.)  Cypress Lakes was not provided as an option initially despite it being visible on the controller's Radar Video Map ("RVM") from the outset of the emergency.  (Id.)  By this point, Decedent had no choice but to attempt to reach the Cypress Lakes Airport.  (Id. at p. 11.)  This required executing yet another mid-air turn in the opposite direction, resulting in an additional loss of speed and altitude which further reduced the already-diminished gliding range of the aircraft.  (Id.)  As a

result, the aircraft was unable to reach Cypress Lakes and crashed into a wooded swamp area.  (Id.)

Decedent was killed in the crash.  (Id. at p. 12.)

During the emergency, the controller failed to inform Decedent that a fourth airport was available for landing—Briggs Field, a private airport closer than Statesboro.  (Id. at p. 11.)  Briggs Field was not depicted on the controller's RVM at the time of the emergency.  (Doc. 253-3, p. 2; doc. 253-10, p. 12.)  The data displayed on RVMs is the responsibility of the facility manager. (See doc. 253-11, p. 2.)  John Hall, the manager for the SAV ATCT at the time ("SAV Manager"), has stated that SAV ATCT was unaware of Briggs Field before the crash.  (Doc. 253-7, pp. 22–24; doc. 253-26, p. 1.)

Plaintiff brought this action seeking wrongful death and survival damages for Decedent's death.  (Doc. 89, pp. 12–13.)  Plaintiff alleges that Defendant, acting by and through the Federal Aviation Administration ("FAA") and the air traffic controllers on duty during the emergency, negligently caused Decedent's death.  (Id. at pp. 13–18.)  Allegations pertinent to the present Motion include that Defendant failed to advise Decedent of appropriate landing fields, failed to provide controllers with accurate and up-to-date information about suitable airfields in the area, and provided controllers with an RVM which failed to list certain airports suitable for landing. (Id. at pp.  14–17.)

Defendant moves to dismiss all claims relating to the design and content of the SAV ATCT's RVM pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure. (Doc 235, p. 1.)  Defendant claims that it has not waived its sovereign immunity for such claims and that this Court thus lacks subject matter jurisdiction over them.  (Id.)  Defendant specifically

argues that these claims are barred by the FTCA's discretionary function exception.[1]  (Id. at pp. 7–18.)  This constitutes a factual attack on the Court's subject matter jurisdiction.  See OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002) (citations omitted).

**STANDARD OF REVIEW**

A court may dismiss a complaint when it lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Motions pursuant to Rule 12(b)(1) take one of two forms: a "facial attack" on subject matter jurisdiction based on the complaint's allegations taken as true or a "factual attack" based on evidentiary matters outside the pleadings.  McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).  In the "factual attack" context, a court considers whether subject matter jurisdiction tangibly exists in fact, irrespective of the complaint's allegations.  Id.  When faced with such a challenge to subject matter jurisdiction, a plaintiff has the burden to prove facts which show jurisdiction exists over its claims.  OSI, Inc., 285 F.3d at 951.

To resolve a factual attack, a court "may consider extrinsic evidence such as testimony and affidavits," rather than being constrained to the allegations in the complaint.  Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citation omitted).  Courts are "free to weigh the facts," subject to clearly erroneous review, without viewing them in the light most favorable to the plaintiffs.  Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009).  In deciding a fact-based motion to dismiss for lack of subject matter jurisdiction, a court

---

[1] Defendant also argues that dismissal of all claims relating to the design of the RVM is warranted because there is no cause of action under Georgia law for the negligent design of an FAA RVM. (Doc. 235, pp. 18–25.)  Finding that the discretionary function exception issue resolves Defendant's partial Motion to Dismiss, (id.), the Court declines to address this argument.

may dismiss on the basis of (1) "the complaint supplemented by undisputed facts evidenced in the record" or (2) "the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).[2] And while plaintiffs are entitled to a reasonable opportunity for discovery and a hearing on this issue, courts are empowered to decide factual motions on affidavits alone, where appropriate, so long as its factual determinations are identified and explained. Id. at 413–14 (citations omitted); see also Fed. R. Civ. P. 43(c) ("[T]he court may hear [a motion] on affidavits or may hear it wholly or partly on oral testimony or depositions."). Furthermore, courts are to "use their judicial experience and common sense in determining whether" a case meets federal jurisdictional requirements. Roe v. Michelin N. Am., Inc., 613 F.3d 1058, 1062 & n.5 (11th Cir. 2010) (citations omitted).

## DISCUSSION

As a sovereign entity, the United States is immune from suit unless it expressly consents and waives its sovereign immunity. United States v. Mitchell, 463 U.S. 206, 212 (1983). "If there is no specific waiver of sovereign immunity as to a particular claim filed against the Government, the court lacks subject matter jurisdiction over the suit." Zelaya v. United States, 781 F.3d 1315, 1322 (11th Cir. 2015) (citing F.D.I.C. v. Meyer, 510 U.S. 471, 475–76 (1994)). "Once a waiver of sovereign immunity is recognized, it still 'must be strictly construed in favor of the United States' and 'not enlarged beyond what the language of the statute requires.'" Smith v. United States, 14 F.4th 1228, 1231 (11th Cir. 2021) (quoting United States v. Idaho ex rel. Dir., Idaho Dep't of Water Res., 508 U.S. 1, 7 (1993)).

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Plaintiff brings this suit under the FTCA, which waives the United States' sovereign immunity from suit in federal courts for its employees' negligence.  See 28 U.S.C. § 1346(b).  Thus, under the FTCA, the United States can be held liable for its employees' torts in accordance with the laws of the state where the tort occurred.  Id.  The FTCA's waiver of sovereign immunity is limited and subject to numerous exceptions, however, including the discretionary function exception outlined in 28 U.S.C. § 2680(a).  Foster Logging, Inc. v. United States, 973 F.3d 1152, 1157 (11th Cir. 2020).  Under this exception, the United States maintains its sovereign immunity as to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  The purpose of this exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy . . . ."  Foster Logging, 973 F.3d at 1157 (quoting United States v. Gaubert, 499 U.S. 315, 323 (1991)) (internal quotations omitted).  If the discretionary function exception applies, no federal subject matter jurisdiction exists.  U.S. Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009) (citing Gaubert, 499 U.S. at 334).  When the United States asserts the discretionary function exception as a challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that the exception does not apply.  Cuadrado-Concepcion v. United States, 851 F. App'x 985, 990 (11th Cir. 2021) (quoting OSI, Inc., 285 F.3d at 951).  Here, Defendant invokes the discretionary function exception for all claims relating to the design and content of the SAV ATCT's RVM.  (See generally doc. 235.)

In United States v. Gaubert, the Supreme Court developed a two-part test to determine whether the discretionary function exception applies.  499 U.S. at 322.  First, the court must

examine the nature of the challenged conduct and determine if it is "discretionary in nature," asking whether the conduct involves "an element of judgment or choice." Foster Logging, 973 F.3d at 1157 (quoting Gaubert, 499 U.S. at 322). This portion of the inquiry focuses on whether "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Id. at 1158 (quoting Gaubert, 499 U.S. at 322) (internal quotations omitted). If so, then there is no judgment or choice involved and the discretionary function exception does not apply. Id. Otherwise, "it will be presumed that the particular act involved an element of judgment or choice." Zelaya, 781 F.3d at 1330 (internal quotations omitted).

If the challenged conduct is discretionary—that is, it involved an element of judgment or choice—the court turns to the second step of the inquiry and determines "whether that judgment is of the kind that the discretionary function exception was designed to shield." Foster Logging, 973 F.3d at 1157 (quoting Gaubert, 499 U.S. at 322–23). This step asks whether the nature of the action or judgment is "susceptible to policy analysis." Id. at 1158 (quoting Gaubert, 499 U.S. at 325). In making this determination, the court is not concerned with "the subjective intent of the government employee" or whether he or she "actually weighed social, economic, and political policy considerations before acting." Id. (quoting Ochran v. United States, 117 F.3d 495, 500 (11th Cir. 1997)). "The inquiry here is not fact-based," looking instead to the *nature* of the challenged conduct in a general sense and asking whether the conduct would be expected to be grounded in policy questions—regardless of whether it actually was. Id. at 1159; see also Autery v. United States, 992 F.2d 1523, 1531–32 (11th Cir. 1993) ("Gaubert . . . cautions against conducting a fact-based inquiry . . . urging courts instead to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one we would expect inherently to be grounded in considerations of policy.") (internal quotations omitted). Whether the government

7

employee acted negligently in exercising their discretion is irrelevant.  Foster Logging, 973 F.3d at 1166.

Before applying this two-step test, the Court must determine what specific conduct is at issue.  Autery, 992 F.2d at 1527.  Defendant characterizes Plaintiff's claims as "relating to the design and content" of the RVM, arguing that "the issue is whether Briggs Field was required to be depicted on the [RVM] at the Savannah . . . facility."  (Doc. 235, pp. 7, 10.)  Plaintiff instead urges that Briggs Field was not omitted pursuant to a choice or judgment, but rather because the SAV Manager did not know it existed.  (Doc. 253, p. 11.)  Plaintiff contends that "[t]hat ignorance—the failure to know—is the conduct at issue," not the "design" of the RVM (as there effectively was no such design).  (Id.)

Plaintiff's characterization of the disputed conduct is unpersuasive.  The Complaint expressly puts the *design* of the RVM at issue, alleging that SAV ATCT provided inaccurate RVMs which "failed to list certain airports that were safe and appropriate for the subject aircraft to land" and that SAV ATCT "failed to provide air traffic controllers . . . with accurate, up-to-date and correct" information on suitable airfields.  (Doc. 89, p. 17.)  In her Response to the Motion to Dismiss, Plaintiff further urges that the RVM used by the controller was defective and declares that "all chartered airports within a facility's jurisdiction . . . must be displayed, or at least displayable[,] on a controller's RVM."  (Doc. 253, p. 14.)  While the omission of Briggs Field may have resulted from the SAV Manager's ignorance, it is the omission which the Complaint puts at issue.  Moreover, defining the conduct at issue as the specific manner in which a government employee carried out a policy is too narrow for the discretionary function analysis.  See Hogan v. United States, No. 7:10-CV-107 HL, 2012 WL 359706, at *4 (M.D. Ga. Feb. 2, 2012), aff'd sub nom. Hogan v. U.S. Postmaster Gen., 492 F. App'x 33 (11th Cir. 2012) (citing Autery, 992 F.2d at

1527). The question thus before the Court is whether the SAV Manager's selection of display data for RVMs constitutes a discretionary act within the ambit of the discretionary function exception.

## I.    Whether the Challenged Conduct was Discretionary in Nature

Turning to the two-part <u>Gaubert</u> inquiry, the Court must first determine whether a federal statute, regulation, or policy imposed a specific course of action in the design of the RVM. <u>See OSI, Inc.</u>, 285 F.3d at 950 (internal citations omitted). If so, then no judgment or choice was involved and the discretionary function exception does not apply. <u>Id.</u> Plaintiff bears the burden here. <u>Id.</u> at 951. At this stage of the inquiry, it is not enough for Plaintiff to point to general obligations under federal law. Rather, "[o]nly when a federal employee acts contrary to a <u>specific prescription</u> in federal law—be it a statute, regulation, or policy—does the discretionary function exception not apply." <u>Shivers v. United States</u>, 1 F.4th 924, 931 (11th Cir. 2021) (citing <u>Gaubert</u>, 499 U.S. at 322) (emphasis in original).

Much of Plaintiff's argument on this point falls below the above standard. Plaintiff first cobbles together disparate regulations and generalized directives, deducing from them that all airports within an airspace must be depicted on an RVM. (<u>See</u> doc. 253, pp. 12–14, 18.) Plaintiff also urges that the discretion claimed by Defendants would sanction "objectively reckless" or "absurd" conduct. (<u>Id.</u> at pp. 18–19.) These arguments fail to show that a specific provision of federal law or policy prescribed a specific course of conduct for the SAV Manager in preparing the RVM and thus fail to carry Plaintiff's burden. <u>See</u> <u>Cranford v. United States</u>, 466 F.3d 955, 958 (11th Cir. 2006) (plaintiffs bear the burden of showing that the discretionary function does not apply because "a federal statute, regulation, or policy specifically prescribes a course of action embodying a *fixed* or *readily ascertainable* standard") (internal quotations omitted). Plaintiff does, however, identify an FAA Order which she contends mandates specific conduct in the preparation

9

of an RVM—FAA Order 7910.1, (id. at p. 15; see doc. 235-18)—and Plaintiff's expert has identified FAA Order JO 7210.3 as mandating the depiction of all private airports on RVMs, (see doc. 235-11).  Defendant also cites FAA Order JO 7210.3, though it claims that it shows that discretion is afforded to facility managers in preparing RVMs.  (Doc. 235, pp. 11–13.)

Beginning with FAA Order 7910.1, Plaintiff avers that this Order establishes "a straightforward procedure for preparing RVMs."  (Doc. 253, p. 15.)  Plaintiff characterizes the preparation of RVMs as consisting of "formulaic responsibilities," and argues that FAA Order 7910.1 "affords no judgment or choice."  (Id. at p. 16.)  Plaintiff analogizes the process to the "mechanical preparation of aeronautical charts," conduct which has "routinely been held to fall outside the discretionary function exception."  (Id. (citing Allnutt v. United States, 498 F. Supp. 832 (W.D. Mo. 1980); Murray v. United States, 327 F. Supp. 835, 841 (D. Utah 1971); Sullivan v. United States, 299 F. Supp. 621, 625 (N.D. Ala. 1968)).)

Plaintiff's characterization of RVM preparation under Order 7910.1 is inaccurate.  Rather than imposing rigid standards which obviate the exercise of any personal judgment, the Order provides managers with leeway in designing RVMs.  Paragraph 7(d) of the Order, entitled "Air Traffic Terminal Facilities' Responsibilities," provides that the "[m]ap data shown on each individual map is the responsibility of the Facility Manager" and that the map is to "meet the individual requirements of each facility."  (Doc. 235-18, p. 3.)  While each map must be accurate and "consistent with Air Traffic Facility requirements," (id.), the Order plainly affords facilities some discretion over the exact content of each RVM.  No specific rules or requirements are imposed on facility managers aside from general requirements of accuracy, and managers are expressly permitted to tailor the RVM's content to meet the individual needs of their facility.  (Id.) Importantly, nothing Order 7910.1 mandates that an RVM include specific data, much less requires

10

that it display all private-use airports within a jurisdiction.  (See generally id.)  Thus, the Order

does not defeat application of the discretionary function exception.

Moreover, FAA Order JO 7210.3Z (relied on by Plaintiff's expert and Defendant) grants

facility managers discretion in designing RVMs.  (Doc. 235-5.)  Order JO 7210.3Z "provides

direction and guidance for the day-to-day operations" of air traffic control facilities, with

Paragraph 3-7-3 concerns display map data for video maps.  (Id. at pp. 2, 4.)  Paragraph 3-7-3

provides:

> To reduce scope clutter and increase operational efficiency, limit data on display
> maps to the following (except for subparagraph o, facility air traffic managers may
> delete items not required):
>     **a.** Airports/heliports.
> *NOTE−*
> *Mission Support Services, Air Traffic Support, AJV−5 will verify the accuracy of*
> *airport status on video maps they produce.  Facilities will be notified by AJV−5*
> *that new radar video maps (RVMs) will be sent when a depicted airport is no longer*
> *operational.*
>     **b.** Runway centerline extension and/or final approach course.
> *REFERENCE−*
> *FAAO JO 7110.65, Para 5−9−1, Vectors to Final Approach Course.*
>     **c.** Hospital emergency landing areas.
>     **d.** NAVAIDs and fixes.
>     **e.** Reporting points.
>     **f.** Airway/route centerlines.
>     **g.** Boundaries (control, special use areas, terminal buffer areas, outer fix holding
>     pattern airspace areas, no transgression zones, etc.).
>     **h.** Handoff points.
>     **i.** Special use tracks (scramble, recovery, Instrument Departures, etc.).
>     **j.** Obstructions.
>     **k.** Prominent geographic features (islands, mountains, etc.).
>     **l.** Map alignment indicators.
>     **m.** Range accuracy marks.
>     **n.** Minimum vectoring altitudes in hundreds of feet; e.g., 23−2,300 ft.,
>     100−10,000 ft.
>     **o.** Airports immediately outside your area of jurisdiction that are:
>         **1.** Within airspace used to receive radar handoffs; and
>         **2.** Depicted by the facility having jurisdiction over that airspace.
>     **p.** Virtual intersection markings for non-intersecting converging runways if the
>     flight paths intersect within 1NM beyond the departure end of both runways.
> *NOTE−*

*The intent of subparagraph o is to assist controllers in making emergency airport recommendations when inflight emergencies occur near facility boundaries. There is no intent to establish criteria for airport depiction. However, insofar as facilities having jurisdiction depict airports, then those same airports must be depicted on the adjacent facility's video map.*
***REFERENCE−***
*FAAO JO 7110.65, Para 10−2−15, Emergency Airport Recommendation.*

(Id.)

Defendant contends that this language affords clear discretion to facility managers, permitting them to determine whether an item may be deleted as unnecessary. (Doc. 235, p. 13.) Defendant also notes that Order JO 7210.3Z explicitly identifies mandatory procedures as those containing the words "shall" or "must." (Id. at p. 12; doc. 235-5, p. 3.) While the Order expressly states that other types of maps "must" feature certain minimum features, Paragraph 3-7-3 contains no such language requiring RVMs to feature certain items. (Doc. 235-5, p. 4.) Indeed, no order, regulation, or policy has been identified which states that private-use airports "must" be included in RVMs.

Plaintiff argues that Paragraph 3-7-3's directive to "limit" data to the listed items must be read as a requirement that those items be displayed, interpreting the term to mean "to prescribe." (Doc. 253, p. 18 (citing doc. 253-1, p. 15).) Plaintiff cites testimony by her expert witness, who stated that "only airports not in the controlled airspace can be deleted" and that a manager may not delete any other items on the list. (Id.; doc. 253-17, pp. 2–4.) This reading of Paragraph 3-7-3 is not persuasive. "Limit" in this context clearly means to impose boundaries or restraints, restricting the categories of information displayed on RVMs to only the listed items to reduce scope clutter and improve efficiency.[3] Plaintiff's reading also fails to adequately account for the parenthetical

---

[3] See *LIMIT Definition & Meaning*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/limit (last visited Mar. 6, 2026).

stating that, except for the items listed in subparagraph O, managers may delete items considered unnecessary.

While Plaintiff contests Defendant's interpretation of Order 7210.3Z and urges that the SAV Manager had no authority to delete Briggs Field, (doc. 253, pp. 17–18), she fails to identify a federal statute, regulation, or policy that supports her claims. Instead, Plaintiff points to controllers' obligation to assist aircraft in emergencies and argues that, because controllers rely on RVMs to do so, all airports must be depicted on video maps. (Id. at p. 18.) Plaintiff further argues that Paragraph 3-7-3 permits the SAV Manager to "delete" unnecessary items, but that the SAV Manager could not have "deleted" that of which he was unaware of and which was never added in the first place.[4] (Doc. 253, pp. 19–20.) These arguments are unavailing. At most, Plaintiff has established that the SAV Manager was negligent in preparing the RVM or otherwise abused his discretion—considerations irrelevant in determining whether the discretionary function exception applies. See Foster Logging, 973 F.3d at 1166 ("[T]he mere presence of alleged negligence" cannot defeat the discretionary function exception); Shivers, 1 F.4th at 928 ("The upshot of § 2680(a) is that when the United States's performance of a 'function or duty' involves discretion, the fact that the discretion was misused or abused in any way does not lead to liability for the [government].").

---

[4] Plaintiff attempts to analogize this case to Barna v. United States from the Northern District of Illinois. (Doc. 253, pp. 19–20 (citing 22 F. Supp. 2d 784, 786 (N.D. Ill. 1998)).) Barna declined to apply the discretionary function exception to the National Oceanic and Atmospheric Administration's ("NOAA") failure to depict trees on a map due to apparent ignorance of the trees' existence. 22 F. Supp. 2d at 786. Barna is persuasive authority at best, and the Court finds that it is inapt here. Crucial to the court's decision was that NOAA was subject to a binding requirement to "consider" all obstacles such as the trees and thus the court could not characterize an apparent failure to do so as an act of discretion. Id. Plaintiff has not identified any analogous requirement that the SAV Manager "consider" all airports for inclusion on RVMs, and the case is thus factually distinguishable from this action.

13

In sum, no federal statute, regulation, or policy prescribing specific mandatory conduct in the design of RVMs has been identified.  As such, the Court concludes that the SAV Manager's conduct in designing the RVM was discretionary in nature.  See Swafford v. United States, 839 F.3d 1365, 1370 (11th Cir. 2016) (holding that because plaintiff "has submitted no evidence that a federal statute, regulation, or policy specifically requires" a course of conduct, "we must conclude that [the challenged conduct] involves an element of judgment or choice").

**II.     Whether the Challenged Conduct is of the Kind Intended to be Protected by the Exception**

Turning to the second Gaubert step, the Court must determine whether the SAV Manager's design of the RVM is susceptible to policy analysis and therefore the kind of conduct that the exception is intended to protect.  Foster Logging, 973 F.3d at 1158.  The question at this stage is not whether the SAV ATM *actually* engaged in policy considerations when designing the RVM, but whether one would *expect* the design of RVMs to generally include the consideration of policy. Id. at 1159.

Defendant contends that deciding whether to depict a private-use airport such as Briggs Field is heavily informed by policy considerations. (Doc. 235, pp. 15–18.)  Specific considerations Defendant identifies include "the frequency and overall number of aircraft receiving air traffic control services flying in and out of a particular airport, 'scope clutter' and the operational efficiency of the facility, as well as the resources necessary to train air traffic controllers."  (Id. at p. 16 (citing doc. 235-12, pp. 7, 11).)  Additionally, Defendant notes that private-use airports such as Briggs Field "present unique considerations" related to safety and reliability.  (Id.)  Private-use airports operate without FAA oversight or regulation and are not subject to the minimum safety standards that public-use airports are.  (Id.; doc. 235-12, p. 9.)  Private-use airports seldom have suitable weather reporting capability and are not required to issue notices of airport conditions, as

public-use airports are.  (Doc. 235-12, p. 9.)  Defendant argues that these considerations are significant for the design of an RVM.  (Doc. 235, p. 17.)

Plaintiff argues that "preparing RVM screens to conform to the requirements of a specific ATC facility" is not the kind of conduct the discretionary function exception intends to protect. She contends that Defendant has failed to "meet its burden" of demonstrating that the at-issue conduct is the kind contemplated by the exception.[5]  (Doc. 253, pp. 20–21.)  Plaintiff argues that for the discretionary function exception to apply, there must have been an actual opportunity to exercise discretion.  (Id.)  Such an opportunity was absent here, Plaintiff contends, because "Briggs [Field] was erroneously omitted and the facility was unaware of its existence; there was no choice, let alone one based in policy."  (Id. at p. 21.)  This argument fails as the Court must focus on the general nature of the disputed conduct and not with the factual question of whether the SAV Manager actually made a choice informed by policy.  See Foster Logging, 973 F.3d at 1159. Moreover, any argument that the SAV Manager was negligent or abused his discretion is without force.  As discussed above, these considerations are irrelevant under Gaubert and will not establish Defendant's liability.  See supra Discussion Section I.  As such, Plaintiff's argument fails.

Plaintiff further contends that there "is simply no evidence of any intent to bestow" policy-based discretion on the SAV Manager, urging that "an air traffic manager is not 'an officer whose official responsibilities include assessment of'" policy considerations.  (Id. at p. 21 (quoting Sexton v. United States, 132 F. Supp. 2d 967, 973 (M.D. Fla. 2000)).)  Relying on the Middle District of Florida case Sexton v. United States, Plaintiff claims that the discretionary function exception only applies when the relevant government officer is in a policymaking position.  (Id. at pp. 21–22

---

[5]  Plaintiff cites no authority for the proposition that Defendant bears the burden of proof for the second step of the Gaubert inquiry, and the Court is unaware of any such authority.

(quoting Sexton, 132 F. Supp. 2d at 988).)  This argument is squarely rejected by the Supreme Court's holding in Gaubert that "[d]iscretionary conduct is not confined to the policy or planning level.  It is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case."  499 U.S. at 325 (internal quotations omitted).  Rather than looking to the official responsibilities of a given officer and asking whether they include an assessment of policy considerations, the Gaubert Court held that there is a presumption that an officer's acts are grounded in policy when acting within their discretion.  Id. at 324.  As the Eleventh Circuit has recently noted, "the Supreme Court has long recognized" that the discretionary function exception "extends beyond high-level policymakers and includes government officials at any rank exercising discretion."  Foster Logging, 973 F.3d at 1162 (internal citations omitted).  It is thus immaterial whether the SAV Manager was expressly tasked with making policy determinations.

Plaintiff has thus failed to carry her burden of showing that the exception should not apply.  The purpose behind the discretionary function exception supports applying the exception here as the selection of data for display on RVMs implicates numerous policy concerns.  (See doc. 235-12, pp. 7, 9, 11); see also Hartman v. United States, No. CIV-10-197-L, 2013 WL 501346, at *7 (W.D. Okla. Feb. 8, 2013) ("[T]he information displayed on the air traffic controller's radar screen . . . clearly involve[s] policy-based judgments that are of the type that the discretionary function exception to the FTCA was designed to shield from liability.").

**CONCLUSION**

The SAV Manager's design of the RVM at issue involved an element of judgment and is susceptible to policy analysis.  As such, the discretionary function exception applies, and the Court has no subject matter jurisdiction over claims related to the design and content of the RVM.

Accordingly, the Court **GRANTS** Defendant's partial Motion to Dismiss as to all claims in Count I related to the design and content of the RVM.  (Doc. 235.)

**SO ORDERED**, this 13th day of March, 2026.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA