**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| KRISTEN GARDNER HUNTER, as Executrix of the Estate of RANDALL DON HUNTER, Deceased, as Surviving Spouse of RANDALL DON HUNTER, as Guardian of M.S.H., a minor, and as Guardian of M.B.H., a minor,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | CIVIL ACTION NO.: 4:19-cv-174 |

**O R D E R**

This case emerges out of a fatal airplane crash which took the life of pilot Randall Don Hunter ("Decedent"). (See generally doc. 89.) Plaintiff Kristen Gardner Hunter brings this action as Executrix of Decedent's estate, as Decedent's Surviving Spouse, and as the guardian of Decedent's two minor children, M.S.H. and M.B.H. (Id. at p. 3.) Defendant is the United States of America, being sued under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* (Id.) Before the Court is Defendant's Motion for Summary Judgment, which argues that Plaintiff has failed to present reliable evidence that Defendant's conduct was the cause in fact of the airplane crash. (Doc. 233.) Plaintiff filed a Response, (doc. 257), and Defendant filed a Reply, (doc. 274). For the reasons below, the Court **GRANTS** Defendant's Motion.[1] (Doc. 233.)

[1] Also before the Court is Plaintiff's Motion for Partial Summary Judgment, (doc. 238), and Request for Judicial Notice in Support of Plaintiff's Motion, (doc. 237). Because the Court is granting Defendant's Motion for Summary Judgment, (doc. 233), all remaining motions are **DENIED as moot**. (Docs. 237, 238.)

## BACKGROUND

### I. Factual Background

The Court derives the below facts from the parties' submissions and the summary judgment record. Under Local Rule 56.1, a motion for summary judgment must include a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof. All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by a statement served by the opposing party. S.D. Ga. L.R. 56.1. Under Local Rule 56.1, when a fact is undisputed, the Court includes the fact. For disputed facts, the Court reviews the record to determine if a material dispute exists. When the other party's response reflects the record cited more accurately, the Court modifies the proposed fact and cites the record. The Court also excludes immaterial facts, those stated as an issue or legal conclusion, those not supported by a citation to evidence, or those that the record citation fails to support. And, where appropriate, the Court includes facts drawn from its review of the record. See Williams v. Wal-Mart Stores E., LP, 661 F. Supp. 3d 1264, 1266 (N.D. Ga. 2023). These facts are undisputed unless otherwise stated.

On August 28, 2017, a single-engine Beechcraft A36 Bonanza aircraft owned and piloted by Decedent (the "Aircraft") departed from the Savannah/Hilton Head International Airport ("SAV") on a flight to the Cobb County International Airport–McCollum Field in Kennesaw, Georgia. (Doc. 257-1, p. 2.) The weather was clear on the day of the flight, with Visual Meteorological Conditions prevailing at the time of the accident.[2] (Id.) At 12:30:02 UTC,

[2] Under Visual Meteorological Conditions, pilots may safely operate their aircraft through their own vision and are not reliant on the use of instruments for navigation. *Visual Meteorological Conditions (VMC):*

Decedent contacted an air traffic controller ("Controller Thomas") working at the North Radar Position in the Savannah Air Traffic Control Tower ("SAV ATCT"). (Id.) Controller Thomas instructed Decedent to "climb and maintain [an altitude of] eight thousand [feet]." (Id.)

At 12:35:50, Decedent contacted Controller Thomas to declare an emergency and stated "yeah have an engine failure need to land." (Id. at pp. 2–3.) At 12:35:55, Controller Thomas presented Decedent with two options for landing: turning back to SAV or flying to an airport in Statesboro, Georgia. (Id. at p. 3.) Decedent stated that he would need to fly to Statesboro as the Aircraft was "not gonna make it" to SAV. (Id.) At 12:36:23, Decedent asked Controller Thomas for the distance to Statesboro. (Id.) Decedent repeated this inquiry at 12:36:29. (Id.) Controller Thomas responded at 12:36:31 that Statesboro was twelve miles away, correcting himself three seconds later at 12:36:34 and informing Decedent that the airport was twenty miles away. (Id. at p. 4.) Decedent responded at 12:36:35 that he was unsure if the Aircraft would be able to make the twenty-mile flight to Statesboro but added that it might be able to. (Id.)

At 12:36:39, Controller Thomas presented Decedent with a third option for landing—Cypress Lakes, a private use airport with a turf runway. (Id. at pp. 4, 6–7.) At this time, Cypress Lakes was about seven miles from the Aircraft and required a left turn to reach. (Id. at p. 4.) At 12:36:49, Decedent stated that he was headed to Cypress Lakes. (Id.) At 12:38:48, Controller Thomas told Decedent that "it looks like you're not gonna make it to Cypress Lakes" and asked him if he saw "a road or something" that he could land on. (Id.) Decedent replied at 12:38:56 that he could probably reach Cypress Lakes, and Controller Thomas proceeded to direct Decedent towards that airport. (Id.) At 12:39:04, Controller Thomas informed Decedent that Cypress Lakes was approximately five and a half miles away. (Id. at p. 5.) At 12:40:22, Controller Thomas stated

---

*Comprehensive Guide*, TARMACVIEW, https://www.tarmacview.com/glossary/vmc/ [https://perma.cc/GW9M-3BJC] (last visited Aug. 5, 2026).

that he lost radar contact with Decedent. (Id.) The Aircraft crashed in a wooded area approximately five miles from Cypress Lakes. (Id.) Decedent and the two passengers were fatally injured in the crash. (Id. at p. 2.)

During the emergency, a fourth airport was nearby—Briggs Field, a private use airport with a turf runway. (Id. at p. 6.) Briggs Field was approximately 2.6 miles away from the Aircraft at the time Controller Thomas offered Cypress Lakes as an option for landing. (Id. at pp. 6, 14.) Controller Thomas did not offer Briggs Field as an option for landing and the airport was not depicted on his radar video map ("RVM"). (Id. at p. 8.) RVMs display airspace maps and are utilized by air traffic controllers in navigating and controlling aircraft. (Id. at p. 7; doc. 257-6, p. 2.)

Plaintiff alleges that, rather than suggesting SAV or the Statesboro airport, Controller Thomas should have initially directed Decedent to either Cypress Lakes or Briggs Field as these airports were "within the [Aircraft's] glide range at the onset of the emergency." (Doc. 89, p. 11.) The Aircraft's glide range is thus a central question in the case. "Glide range" refers to how far an aircraft can travel absent the engine thrust necessary for normal flight, with the aircraft being propelled downward by its weight. (See doc. 233-6, p. 4; doc. 274-1, p. 6.) As Defendant notes, "[a]n airplane's glide range is a function of several factors, including its 'glide ratio.'" (Doc. 233, p. 4.) An aircraft's glide ratio is defined as "the distance the airplane travels in relation to the altitude it loses." (Doc. 257-1, p. 5.) To maximize the distance flown during a glide, an aircraft must be flown at the best glide speed, which for the Beechcraft A36 Bonanza is 110 knots indicated airspeed. (Id. at p. 6.) Gliding at airspeed above or below the best glide airspeed increases drag on the aircraft, which reduces glide range. (Doc. 233-6, p. 4.) Additionally, to achieve the

"Maximum Glide Configuration" for the Beechcraft A36 Bonanza airplane, the propeller lever must be pulled to the "Full Aft (low rpm)" position. (Doc. 233-1, p. 4.)

## II. Procedural History

Plaintiff brought this action against Defendant under the FTCA, 28 U.S.C. § 1346(b) and 28 U.S.C. §§ 2671, *et seq*. (Doc. 89, p. 3.) In her Second Amended Complaint, Plaintiff brings two counts of negligence against Defendant. (Id. at pp. 13–19.) Plaintiff alleges that Defendant, by and through the Federal Aviation Administration ("FAA"), "was responsible for providing air traffic control services through its air traffic control towers, facilities and controllers" and thus had a duty "to abide by FAA policies, procedures, regulations and/or guidelines applicable at the time and to perform [its] assigned duties in a safe, appropriate and reasonable manner." (Id. at p. 7.) Among the numerous negligent acts and omissions alleged, Plaintiff claims Defendant "improperly directed [the Aircraft] to an airport that was significantly further away than other airports at which [Decedent] could have (and would have) safely landed the disabled aircraft." (Id. at p. 15.) Plaintiff further alleges that Controller Thomas should have immediately provided Decedent with the locations of Cypress Lakes and Briggs Field when the emergency was first declared, as they were "well within the [Aircraft's] glide range at the onset of the emergency." (Id. at p. 11.) Plaintiff also claims that, "as a result of being directed, by ATC, to turn in two opposite directions while under the positive control of [SAV ATCT], and specifically the [SAV ATCT] air traffic controller, the [Aircraft] lost significant airspeed and altitude and had a substantially reduced glide range." (Id.)

Defendant previously filed a partial Motion to Dismiss, contending that all claims relating to the design and content of the RVM fall within the discretionary function exception to the FTCA and that this Court consequently lacks subject matter jurisdiction over them. (See generally doc.

235.) The Court granted the Motion, dismissing all claims in Count I of the Second Amended Complaint related to the design and content of the RVM. (See doc. 277.) As such, Plaintiff cannot establish Defendant's negligence through the omission of Briggs Field from the RVM.

Given the technical nature of the factual issues underlying Plaintiff's claims, each party has retained numerous expert witnesses. For purposes of the present Motion, Plaintiff's relevant witnesses include James Parham, Mark Callender, Charles Pereira, and Matthew Robinson. Parham was retained as Plaintiff's air traffic control expert. (Doc. 233-8.) Callender was retained to design and conduct a flight test and generate various "glide predictions" for the Aircraft to determine whether it could have safely landed at either Cypress Lakes or Briggs Field. (Doc. 233-11, p. 5; doc. 233-12.) Pereira was retained to provide expertise in the reconstruction of the events leading up to the crash of the Aircraft. (Doc. 233-14, p. 2; doc. 233-13.) Robinson is Plaintiff's piloting expert and was retained to "determine the contributing causes of the crash relating to piloting and aviation human factors." (Doc. 233-10, p. 3; doc. 233-9.) Also relevant is Defendant's piloting expert, Kenneth Orloff, who analyzed the flight path of the Aircraft and compared it with hypothetical flight paths that the Aircraft could have taken had Cypress Lakes been suggested to Decedent at the outset of the emergency. (Doc. 257-1, p. 13; doc. 257-26.)

Defendant filed a series of motions seeking to exclude the testimony of Callender, Pereira, and Robinson. (Docs. 230, 231 & 232). The Magistrate Judge denied Defendant's Motion to Exclude the Testimony of Callender. (Doc. 280, pp. 9–25.) However, Defendant's Motion to Exclude the Testimony of Pereira was granted. (Id. at pp. 25–37.) The Motion to Exclude Robinson's testimony was granted in part and denied in part, with Robinson being able to testify as to what a pilot would expect from an air traffic controller under the circumstances but not being able to offer any testimony as to what an air traffic controller *should* do or whether the Aircraft

could have reached either Briggs Field or Cypress Lakes. (Id. at pp. 37–43.) Robinson is also barred from offering opinions as to Decedent's state of mind during the emergency, but he may offer testimony about the reasonableness or recklessness of Decedent's actions. (Id. at pp. 43–48.)

Defendant now moves for summary judgment, contending that Plaintiff has failed to provide reliable evidence that Controller Thomas's alleged negligence is the factual cause of the accident. (See generally doc. 233.) Plaintiff filed a Response opposing Defendant's Motion, arguing that the record establishes the existence of a genuine factual dispute as to causation. (See doc. 257.) Defendant filed a Reply. (Doc. 274.)

**STANDARD OF REVIEW**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

The moving party bears the burden of establishing there is no genuine dispute as to any material fact. See Williamson Oil Co. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party has the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). If the moving party discharges this burden, the burden shifts to the nonmovant to present

affirmative evidence to show a genuine issue of fact. Anderson, 477 U.S. at 257. When the moving party has the burden of proof at trial, the moving party "must show affirmatively the absence of a genuine issue of material fact," supporting its motion with "credible evidence that would entitle it to a directed verdict if not controverted at trial." United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala., 941 F.2d 1428, 1438 (11th Cir. 1991) (internal citations omitted).

In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cnty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011) (citing Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616 (11th Cir. 2007)). However, "facts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. (emphasis and citations omitted). Mere speculation does not create a genuine issue of material fact. Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) (internal quotations omitted).

**DISCUSSION**

Under the FTCA, the liability of the United States is determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA requires courts to apply the "whole law" of the relevant state, including its choice of law rules. Richards v. United States, 369 U.S. 1, 11–13 (1962). Here, the relevant conduct occurred in Georgia. (Doc. 257-1, p. 2.) Georgia follows the doctrine of *lex loci delicti* in tort cases, applying the substantive

law of the state where the tort was committed. Bullard v. MRA Holding, LLC, 740 S.E.2d 622, 625 (Ga. 2013). Because the alleged tort here occurred in Georgia, Georgia law governs.

Negligence under Georgia law is not to be presumed but is instead "a matter for affirmative proof." Purvis v. Steve, 643 S.E.2d 380, 383 (Ga. Ct. App. 2007). To recover for negligence in Georgia, a plaintiff must show four elements: a duty, a breach of that duty, causation, and damages. Yearty v. Scott Holder Enters., Inc., 824 S.E.2d 817, 820 (Ga. Ct. App. 2019) (internal citation omitted). Causation is further divided into two elements: cause in fact and proximate causation. Id. Defendant's Motion focuses on the element of cause in fact, or factual causation. (Doc. 233, pp. 7–16.) To establish factual causation, "the plaintiff ordinarily must prove that, but for [the defendant's] conduct, he would not have sustained the injury." Yearty, 824 S.E.2d at 820–21 (internal quotation omitted) (alterations adopted). "A mere possibility of such causation is not enough." Purvis, 643 S.E.2d at 383–84 (internal citation omitted); see also Tuggle v. Helms, 499 S.E.2d 365, 368 (Ga. Ct. App. 1998) ("Guesses or speculation which raise merely a conjecture or possibility [of factual causation] are not sufficient to create even an inference of fact for consideration on summary judgment."). To satisfy their burden, a plaintiff "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result." Purvis, 643 S.E.2d at 383 (internal citation omitted); see also Redmon v. Daniel, 779 S.E.2d 778, 781–82 (Ga. Ct. App. 2015) (plaintiff bears burden of proving causation by a preponderance of evidence).

Generally, questions of causation are "for the [the finder of fact] to resolve and should not be determined by a trial court as a matter of law except in plain and undisputed cases." Ogletree v. Navistar Int'l Transp. Corp., 535 S.E.2d 545, 548 (Ga. Ct. App. 2000). However, as Plaintiff brought this case pursuant to Section 1346(b) of the FTCA, (doc. 89, p. 3), the Court is the finder

of fact here. 28 U.S.C. § 2402 ("[A]ny action against the United States under section 1346 [of the FTCA] shall be tried by the court without a jury . . . .") As Defendant notes, (doc. 274, p. 2), a court serving as the factfinder in a nonjury case may make factual determinations and draw inferences at the summary judgment stage where there are no issues of witness credibility. Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc., 830 F.3d 1242, 1251 (11th Cir. 2016) (internal quotations and citations omitted); see also Useden v. Acker, 947 F.2d 1563, 1572 (11th Cir. 1991) (quoting Nunez v. Superior Oil Co., 572 F.2d 1119, 1123–24 (5th Cir.1978)).

Here, Defendant argues that cause in fact has not been established as "Plaintiff has failed to present reliable evidence that [Decedent] would have safely landed at Cypress Lakes or Briggs Field but for the air traffic controller's alleged negligence." (Doc. 233, p. 7.) Defendant urges that Plaintiff cannot meet her burden of proving factual causation through "conclusory allegations and speculation," noting that "[w]hile all reasonable inferences must be drawn in favor of the nonmoving party, an 'inference based on speculation and conjecture is not reasonable.'" (Id. at p. 6 (first quoting Glasscox v. City of Argo, 903 F.3d 1207, 1213 (11th Cir. 2018); then quoting Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019)).)

The bulk of Defendant's Motion to Dismiss is dedicated to critiquing Plaintiff's proffered expert testimony. (Id. at pp. 7–13, 15.) Defendant contends that Plaintiff is impermissibly relying on "hypothetical scenarios" offered by different expert witnesses, each of whom lacks a sufficient basis for their conclusions. (See id. at pp. 7–13.) According to Defendant, it is "entitled to judgment at this point because Plaintiff's experts' reliance upon hypotheticals, not the real facts of this accident flight, means Plaintiff has failed to meet her burden of proof on factual causation." (Id. at p. 13.) Plaintiff responds that Defendant's emphasis on expert opinion is misplaced, characterizing the present action as a "general negligence" case which "do[es] not require expert

evidence to prove causation." (Doc. 257, p. 11.) Instead, Plaintiff argues that causation here can be established solely through the undisputed non-expert evidence. (Id. at pp. 14–16.) Defendant disputes this and avers that expert testimony is required as the factfinder here is tasked with assessing complex matters beyond the scope of lay knowledge. (Doc. 274, pp. 17–20.) Whether expert testimony is required in this case is thus a central point of contention.

## I. Whether Expert Evidence is Required

In arguing that expert testimony is required to prove causation, Defendant relies on Cowart v. Widener, 697 S.E.2d 779, 790 (Ga. 2010). (Doc. 233, pp. 13–14.) In Cowart, the plaintiff sued the defendant following the death of his brother-in-law, contending that the defendant had caused the death by wrongfully delaying the provision of necessary medical care. 697 S.E.2d at 781. The Supreme Court of Georgia noted that there were numerous unresolved medical questions which a jury could not resolve using their "common sense and experience," thus necessitating expert testimony. Id. at 789–90. The Court acknowledged that "such expert evidence is not required in the mine run of simple negligence cases," but held that it is needed where the factfinder would need to know the answers to questions that "can be answered accurately only by witnesses with specialized expert knowledge." Id. at 786. In other words, expert evidence may be required whenever there is "a situation where the plaintiff need[s] to go beyond common knowledge and experience to meet her initial burden of showing causation." Id. at 784.

Plaintiff avers that "[o]nly in cases requiring specialized knowledge, such as toxic torts or—most commonly—cases requiring 'specialized medical knowledge' is expert evidence needed for causation." (Doc. 257, pp. 11–12.) By contrast, "[w]here the causal link between the defendant's conduct and the decedent's injury can be determined by a lay jury without expert guidance, no expert evidence need be produced to defeat a defense motion for summary judgment."

(Id. at p. 11 (quoting Cowart, 697 S.E.2d at 785).) Plaintiff argues that "the cases upon which Defendants rely all implicated specialized medical knowledge as to the cause of death" and are thus inapposite. (Id. at p. 12.) According to Plaintiff, determining causation here does not require the sort of specialized knowledge needed in cases such as Cowart. (Id. at pp. 11–12.) Instead, Plaintiff argues that she need only present sufficient evidence from which the factfinder may reasonably conclude that it is "more likely than not that [Defendant's] conduct did in fact cause the injury" and that her burden may be satisfied by pointing to "some evidence beyond speculation." (Id. at p. 13 (first quoting Blondell v. Courtney Station 300 LLC, 865 S.E.2d 589, 595 (Ga. Ct. App. 2021); then quoting Callaway Gardens Resort, Inc. v. Grant, 878 S.E.2d 65, 69 (Ga. Ct. App. 2022)).)[3]

Plaintiff is correct that expert testimony is only required to prove causation where "the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience" and requires specialized expert knowledge. Cowart, 697 S.E.2d at 785–86. However, Plaintiff errs in that she appears to argue that such "specialized knowledge" is only needed in certain categories of cases—namely toxic torts cases and cases raising complex medical questions.

[3] Plaintiff argues that "[o]pinions considering the question of causation resulting from [air traffic control] negligence consistently recognize causation where the crash 'might' have been avoided but for the controller's negligence," (doc. 257, p. 13), relying on three cases: Ingham v. E. Air Lines, Inc., 373 F.2d 227 (2d Cir. 1967); Himmler v. United States, 474 F. Supp. 914 (E.D. Pa. 1979); and Stork v. United States, 430 F.2d 1104 (9th Cir. 1970). Plaintiff contends that these cases establish that there is no issue with causation where the record shows that the crash *may* have been avoided absent the alleged negligence. (Doc. 257, pp. 13–14.) These cases—all from outside the Eleventh Circuit—do not apply Georgia law and are concerned with the issue of proximate causation rather than factual causation. See Ingham, 373 F.2d at 236; Himmler, 474 F. Supp. at 941–42; Stork, 430 F.2d at 1107. More crucially, the rule that summary judgment may be avoided where a plaintiff produces evidence sufficient to show that an injury "might have" been avoided but for the alleged negligence is inconsistent with the rule in Georgia that "a mere possibility" of causation is not enough to survive summary judgment and that where the issue of causation "remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant." Purvis, 643 S.E.2d at 383; Giles v. Greenhouse Apartments, LLC, 926 S.E.2d 324, 328 (Ga. Ct. App. 2026) (quoting George v. Hercules Real Est. Servs., Inc., 795 S.E.2d 81, 85 (Ga. Ct. App. 2016)). As such, these cases are unpersuasive here.

(See doc. 257, pp. 11–13.) While Cowart addressed medical questions and thus focused on the need for expert medical testimony, it contains no language limiting its basic holding to that specific context. See 697 S.E.2d at 784–87. Instead, Cowart articulates a rule that expert evidence may be necessary whenever the factfinder is required to answer questions going beyond common knowledge and experience. See id. at 784–86; cf. Jordan v. Smoot, 380 S.E.2d 714, 715 (Ga. Ct. App. 1989) (expert testimony not required where "the injury sustained is a matter which jurors must be credited with knowing by reason of common knowledge").

Plaintiff urges that determining causation here would not require the factfinder to go beyond common knowledge or experience. (Doc. 257, pp. 14–16.) Plaintiff stresses that Cypress Lakes and Briggs Field were closer to the Aircraft than the airports Controller Thomas suggested and that Decedent followed Controller Thomas's instructions at "every step of the way" such that it can be inferred that Decedent would have also followed a recommendation to divert to Cypress Lakes or Briggs Field had it been suggested. (Id.) According to Plaintiff, "[t]he simple fact that [Decedent] flew twice the distance that would have been required to reach Briggs [Field] is enough to create a reasonable inference that the [A]ircraft would have safely landed" had Controller Thomas suggested Briggs Field as an option. (Id. at p. 16.)

At first glance, Plaintiff's argument has some logical appeal. However, how far an airplane can travel is a question of physics, not logic. The technical calculations necessary to answer that question fall far outside the bailiwick of the average layman. As Defendant argues, determining whether the Aircraft could have safely landed at a given airport is not a matter of simply comparing the distance to the airport at the outset of the emergency with the actual distance flown by the Aircraft. (Doc. 274, pp. 18–19.) Instead the inquiry hinges on a highly technical analysis of a myriad of factors. It is undisputed that the Aircraft's glide range during the emergency was

dependent on factors such as its glide ratio and glide speed at the time. (See doc. 257-1, pp. 5–6.) Callender's report makes clear that determining an aircraft's glide ratio is a complex endeavor and requires accounting for the speed and direction of winds (headwind, tailwind, and crosswind) during the flight. (See doc. 274-1, p. 13.) Additionally, Orloff's deposition and report show that the Aircraft's altitude and bank angle are also salient factors in determining whether it could have safely reached either Cypress Lakes or Briggs Field. (See doc. 257-26, pp. 12–13, 31; doc. 274-2, pp. 27–28, 93.) Evaluating these factors and applying them to the Aircraft's flight capabilities goes well beyond the knowledge and experience of the typical layperson.[4] As such, Plaintiff must provide competent expert testimony to carry her burden on the issue of factual causation.

## II. The Sufficiency of Plaintiff's Evidence

The Court now turns to the sufficiency of Plaintiff's proffered expert evidence. In arguing that there is a genuine dispute as to causation, Plaintiff relies on the opinions of three of her experts: Callender, Robinson, and Pereira. (See doc. 257.) Plaintiff also contends that statements by Defendant's piloting expert, Orloff, support the finding that the Aircraft could have reached Cypress Lakes and Briggs Field. (Id. at pp. 19–20.) As noted above, the Magistrate Judge, in ruling on Defendant's motions to exclude Plaintiff's three witnesses, found Pereira's testimony inadmissible and significantly restricted the scope of Robinson's testimony. (See doc. 280, pp. 25–48.)

Beginning with Callender, Defendant challenges his testimony as relying on speculation and hypothetical scenarios. (Doc. 233, pp. 9–11.) Defendant is heavily critical of Callender's "glide predictions" for the Aircraft, noting that Callender has testified that he was "not asked" to

[4] Indeed, other courts have recognized that determining the cause of airplane crashes requires expert testimony. See Michaels v. Avitech, Inc., 202 F.3d 746, 753 (5th Cir. 2000) ("In this case, expert testimony was necessary to establish the likely cause of an aircraft disaster.").

determine the actual glide ratio of the aircraft in preparing these predictions. (Id. at pp. 9–10 (quoting doc. 233-11, p. 12).) Defendant further claims that "[e]ach of Dr. Callender's 'glide predictions' is . . . based on assumptions that are contrary to the factual record and/or cannot be proved." (Id. at p. 10.) Defendant cites Callender's testimony that he

> assumed that the airplane was flown at 110 [knots]; assumed that the ground track was held constant for 13 seconds after the emergency was declared; assumed that the turns were at a constant bank angle as opposed to a varying bank angle throughout any turn; and assumed that the propeller was windmilling, as the flight test airplane continuously did throughout flight testing.

(Id. (quoting doc. 233-12, p. 46).) Callender has further testified that, in making his glide predictions, he assumed that the propeller would have been in the full-aft lever position and that the cowl flaps of the Aircraft were closed. (Id.)

Defendant avers that Plaintiff has presented no factual evidence to support these assumptions and stresses that "there is undisputed evidence that contradicts virtually all of Dr. Callender's predicate assumptions." (Doc. 233, pp. 10–11.) Callender himself has acknowledged that the Aircraft's speed was not 110 knots as he originally assumed, later testifying that he believes the average airspeed of the Aircraft during the flight was 80 knots. (Doc. 233-12, p. 18.) The bank angles Callender used—which Defendant characterizes as being "randomly selected"—were likewise higher than the actual bank angle throughout the majority of the flight. (Doc. 233, p. 11 (citing doc. 233-12, p. 43).) Given that Callender did not know the Aircraft's actual glide ratio during the emergency and instead prepared a hypothetical glide ratio predicated upon questionable factual assumptions, Defendant urges that he "has no basis to say that the [Aircraft] would have safely landed at Cypress Lakes or Briggs Field but for the air traffic controller's alleged negligence." (Id.)

Defendant analogizes the present case to Anthony v. Chambless, 500 S.E.2d 402 (Ga. Ct. App. 1998). (Doc. 233, p. 14.) In Anthony, the plaintiffs presented expert testimony opining that "the decedent would have had an 80 percent chance of survival *under certain circumstances*," basing that determination on an idealized scenario. 500 S.E.2d at 405. The Georgia Court of Appeals rejected this opinion as contradicted by the factual record, holding that contrary evidence in the record rendered the opinion "so attenuated to be speculative." Id. Defendant argues that, as in Anthony, "Plaintiff cannot substitute assumptions to establish causation." (Doc. 233, p. 15.)

In response to these criticisms, Plaintiff stresses that "Callender's calculations demonstrate what *was possible* had [Controller Thomas] performed properly and the [Aircraft] had been flown according to the recommended configuration." (Doc. 257, p. 20.) Similarly, Callender himself testified that he did not calculate the Aircraft's actual flight path, but instead "calculated what the aircraft *can* do." (Doc. 233-12, p. 43 (emphasis added).) Callender's calculations are thus better viewed as speculation about the Aircraft's possible performance under certain assumed conditions. As such, Callender's calculations and testimony support only the speculative possibility that the accident would not have occurred but for Controller Thomas's acts and are thus insufficient by themselves to establish factual causation. See Purvis, 643 S.E.2d at 383–84; see also Anthony, 500 S.E.2d at 405 (finding expert opinion "irrelevant" and insufficient to support a finding of causation where it relied on assumptions contradicted by the record).

While Callender's testimony is insufficient by itself to establish causation, that is not dispositive. As Plaintiff notes, "it is well established that causation may be established by linking the testimony of several different experts." (Doc. 257, p. 17 (quoting Fields v. Taylor, 797 S.E.2d 127, 130 (Ga. Ct. App. 2017)).) Plaintiff avers that causation can be established by combining Callender's calculations with the testimony of both Plaintiff's and Defendant's experts. (Id.)

Plaintiff places particular emphasis on Robinson's human factors analysis, contending that "Callender's calculations demonstrate what *was possible* had ATC performed properly and the [Aircraft] had been flown according to the recommended configuration" while Robinson's testimony establishes that "[t]he *actual* aircraft configuration, speed, altitude, direction etc. were a product of [Decedent] becoming mentally overloaded due to inaccurate and improper instructions by [Controller Thomas]." (Id. at p. 20.) Using Robinson's analysis, Plaintiff claims that "[b]ut for [Controller Thomas's] negligence, [Decedent] would have avoided the confusion and disorientation resulting from the misinformation," allowing him to better focus on landing. (Id.)

This argument is unavailing. As the Magistrate Judge observed, any testimony as to Decedent's actual state of mind is "completely speculative" and thus unreliable. (Doc. 280, p. 47.) As such, the Magistrate Judge properly held that Robinson may not offer such testimony. (Id. at p. 48.) Causation thus cannot be established through any argument that Decedent was experiencing "spatial disorientation" or suffering from "cognitive overload" as a result of Controller Thomas's allegedly improper instructions.

Plaintiff further attempts to rely on Orloff's testimony, claiming that "[e]ven Defendant's piloting expert [Orloff] opined that, had [Controller Thomas] initially provided Cypress [Lakes], [Decedent] would have had . . . enough altitude to safely land." (Doc. 257, p. 20.) Plaintiff further claims that Orloff "admits" no calculation was needed to determine whether Decedent could have reached Briggs Field safely. (Id. at p. 19.) Defendant responds that Plaintiff misrepresents Orloff's testimony, taking his statements out of context to create a misleading impression of his position. (Doc. 274, pp. 16–17.)

As to Orloff's position on Cypress Lakes, Plaintiff misrepresents the record. Citing both Orloff's deposition and the post-crash report Orloff prepared, Plaintiff claims that this evidence "provides a basis [for finding] that [Controller] Thomas's actions in failing to provide Cypress Lakes increased the harm." (Doc. 257-1, p. 13 (first citing doc. 257-25, pp. 7–8; then citing doc. 257-26, p. 31).) This is incorrect. In the report Plaintiff cites, Orloff concludes that the Aircraft would have failed to reach Cypress Lakes. (Doc. 257-26, p. 31.) Utilizing two different possible wind profiles, Orloff constructed hypothetical flight paths that would have resulted had Decedent attempted to turn towards Cypress Lakes less than seven seconds after declaring an emergency and concluded that each flight path fell short of reaching Cypress Lakes. (Id.) Orloff ultimately concluded that the accident resulted from a loss of engine power coupled with Decedent's alleged errors. (Id. at p. 32.) The Orloff report thus directly undermines Plaintiff's argument that Controller Thomas's alleged errors caused the accident. As for Orloff's testimony, nowhere in the portion of the deposition Plaintiff provides does Orloff state that the Aircraft could have reached Cypress Lakes. (See generally doc. 257-25.)

As to Briggs Field, Orloff testified that the Aircraft would not be able to safely reach that airport. Even if Briggs Field had been depicted on the RVM and offered as an option to Decedent, Orloff opined that the Aircraft would have failed to land given the wind conditions that existed. (Doc. 274-2, p. 101.) While Plaintiff cites statements by Orloff that the Aircraft was capable of landing at Briggs Field, (doc. 257, p. 19; doc. 257-1, p. 13 (citing doc. 257-25, pp. 3–4, 7–8)), those statements are taken out of context. Viewed in context, Orloff appears to have instead been opining that the Aircraft was physically capable of landing on the small grass strip on Briggs Field, referencing the physical dimension of the airstrip rather than the actual flight conditions. (See doc. 257-25, pp. 7–8; doc. 274-2, p. 90.) Plaintiff also cites portions of Orloff's deposition which

address an orientation flight performed by Orloff rather than the accident flight. (Doc. 257, p. 19 (citing doc. 257-25, pp. 3–4).) Contrary to Plaintiff's argument, Orloff's testimony thus provides no support for the contention that the aircraft would have safely landed at Briggs Field but for Controller Thomas's actions.

Plaintiff's other experts similarly fail to support a finding of factual causation. Defendant notes that while Plaintiff's air traffic control expert, James Parham, testified that he believed Decedent could have safely reached Cypress Lakes had it been recommended to him at the outset of the emergency, "he admittedly did not perform any kind of flight path reconstruction to support this opinion." (Doc. 233, p. 7 (citing doc. 233-8, p. 66).) Indeed, when asked for the basis of this opinion, Parham responded only that he "saw something in all that discovery" that said that a pilot "had flown it," but could not remember who this pilot was. (Doc. 233-8, pp. 51–52.) As such, Parham's testimony constitutes speculation and fails to establish a dispute of material fact. See Cordoba, 419 F.3d at 1181 ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (internal citation omitted).

Even when expanding the analysis to include non-expert evidence, Plaintiff has not produced evidence from which the factfinder could determine that Defendant's actions or inactions where the cause if fact of the accident. Plaintiff argues that the record provides facts which support the finding that, had Controller Thomas provided the heading and distance to either Briggs Field or Cypress Lakes, Decedent "would have diverted there and this crash would have been avoided." (Doc. 257, p. 15.) Plaintiff stresses that Decedent "followed [Controller Thomas's] instructions every step of the way" such that the factfinder could easily infer that Decedent "would have also

taken Controller Thomas's recommendation to divert to Briggs Field, a much closer option" than the other airports which Decedent attempted to reach. (Id.) This argument is unpersuasive.

As an initial matter, it is not enough to show that Decedent would have diverted to Briggs Field or Cypress Lakes had they been offered at the outset. For factual causation, the question is not whether Decedent would have acted differently under a different set of facts; rather, the relevant inquiry is whether the injury (here the fatal crash) would have occurred absent the alleged negligence. See Yearty, 824 S.E.2d at 820–21 (factual causation requires showing that, absent the defendant's conduct, the plaintiff would not have sustained the injury). In other words, establishing factual causation requires a showing that the ultimate result would have been different absent the supposed negligence. Callaway Gardens, 878 S.E.2d at 69 ("[T]o survive summary judgment, a plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.") (internal quotations and citation omitted). In this case, that requires a showing that, had Controller Thomas promptly offered either Cypress Lakes or Briggs Field as an option for landing, the Aircraft would not have crashed but would have instead landed safely. It is not enough to show that Decedent would have attempted to reach either Cypress Lakes or Briggs Field if there is no indication that doing so would have changed the result. Again, this inquiry involves technical questions outside the factfinder's knowledge, and Plaintiff has not provided competent evidence from which the Court could find in her favor. Additionally, the record does not show that either Cypress Lakes or Briggs Field was a viable alternative to the two public-use airports Controller Thomas suggested.

Beginning with Briggs Field, the record strongly indicates that it was not a viable option for landing. As noted above, Briggs Field was not depicted on the RVM Controller Thomas used.

As for whether Briggs Field should have been depicted on the RVM at the time of the accident, that choice was left to SAV ATCT's discretion and thus falls within the discretionary function exception to the FTCA. As such, Defendant cannot be held liable for that choice. (See generally doc. 277.) Briggs Field's omission from the RVM must therefore be taken as a given when considering whether, but for Controller Thomas's failure to offer it as an option for landing, the crash would have been averted.

The competent expert evidence and lay testimony, even when viewed in the light most favorable to Plaintiff, does not support the viability of Briggs Field as an option for landing, particularly given its omission from the RVM. Plaintiff has not shown that it would have been reasonable for Controller Thomas to have recommended Briggs Field even if he was aware of it at the time. Dennis Hartman, a former air traffic controller and instructor with decades of experience, testified that "[w]e are not going to vector an airplane to an airport that's not depicted on the radar map, no." (Doc. 256-6, p. 37.) Parham testified that Controller Thomas should "[a]bsolutely not" have attempted to vector Decedent to Briggs Field given that it was not depicted on the RVM, stating that Cypress Lakes was instead the best option for landing under the circumstances. (Doc. 233-8, p. 59.) Parham further testified that he would have suggested Briggs Field as an option if he "was a super controller and . . . knew exactly where it was," but that he was unsure if he would suggest it if he were only an "average controller." (Id. at p. 55.) Parham was also unaware of any examples of a controller vectoring an airplane to a private-use airport which was not depicted on their RVM in an emergency. (Id. at p. 96.) Defendant's air traffic control expert Darren Gaines similarly concluded that Briggs Field was not a safe option given its omission from the RVM, rejecting an argument that Controller Thomas should have attempted to direct Decedent there by "superimpos[ing] the location of Briggs Field [from other documents] onto the RVM." (Doc. 238-

3, p. 25.) Gaines opined that he does not believe that an air traffic controller should offer such an option and that "[i]t is highly unlikely . . . that a pilot would accept" such a vector "if advised that it was based on mentally overlaying a Sectional Chart or other document onto his [RVM]." (Id.) Moreover, even if Briggs Field had been depicted on the RVM, and even if Controller Thomas had offered it as an option, Plaintiff has not produced competent evidence that the Aircraft would have safely landed there. As noted above, Orloff has opined that the Aircraft would not have reached Briggs Field under the conditions prevailing on the day of the accident. (Doc. 274-2, p. 101.) Plaintiff has produced nothing that would entitle a factfinder to disregard this evidence and conclude that it is more likely than not that the Aircraft would not have crashed had Briggs Field been offered as an option.

As for Cypress Lakes, it was included on the RVM and Controller Thomas eventually suggested it. Still, Plaintiff has produced insufficient evidence to support a finding that the Aircraft would have safely landed there even if it had been recommended at the outset. While Cypress Lakes may have been closer to the Aircraft at the time Decedent first declared an emergency than either SAV or Statesboro, it cannot be assumed from this fact alone that an earlier recommendation of Cypress Lakes would have changed the outcome. Instead, factors such as tailwinds, headwinds, and the Aircraft's altitude must be considered. Beyond noting its closer proximity to the Aircraft at the time of the emergency than either SAV or Statesboro and the generally clear weather, Plaintiff has not offered any competent evidence which indicates that the Aircraft could have reached Cypress Lakes. Plaintiff does offer Callender's conclusions that the Aircraft *may* have under reached Cypress Lakes under certain assumed conditions. However, as discussed above, Callender did not account for the actual conditions during the flight and based his conclusion on certain assumptions at odds with the factual record. Not only is there no competent evidence that

the Aircraft would have reached Cypress Lakes under the actual flight conditions, there is evidence to support the opposite conclusion—that the Aircraft would not have reached Cypress Lakes under the actual flight conditions. Orloff's report concluded that the Aircraft would fail to reach Cypress Lakes under a variety of wind conditions. (Doc. 257-26, p. 31.)

Moreover, even assuming that the Aircraft would have reached Cypress Lakes or Briggs Field, it does not necessarily follow that the accident would have been averted. As the Court's prior Order acknowledged, private-use airports such as Cypress Lakes present unique challenges related to safety and reliability. (Doc. 277, p. 14.) In his report, Gaines found that both Briggs Field and Cypress Lakes presented hazards—such as abandoned cars, heavy equipment, and two ponds adjacent to the runway at Briggs Field—which are "not present at public airports" (such as SAV and Statesboro). (Doc. 238-3, p. 20.) Indeed, Gaines concluded that Controller Thomas's suggestion of SAV and Statesboro before Cypress Lakes "was in accordance with [the] ATC Manual" on providing emergency assistance. (Id.) While Plaintiff need not affirmatively prove that the Aircraft would have safely landed at Cypress Lakes to survive summary judgment, in the face of Defendant's evidence, she must do more than show the mere speculative possibility of a safe landing. Giles, 926 S.E.2d at 328. Absent competent evidence that the Aircraft would have safely reached Cypress Lakes or Briggs Field—much less that the Aircraft would have safely landed at one of those locations—Plaintiff fails to establish causation. See Anders v. United States, 307 F. Supp. 3d 1298, 1342 (M.D. Fla. 2018) (holding that, because plaintiffs "presented no credible evidence that Anders would have been able to land sooner at any other airport or in any other fashion," their claims "fail[ed] on the element of causation").

Plaintiff has thus failed to produce evidence—expert or otherwise—sufficient to support a finding that it is more likely than not that the accident was caused by Controller Thomas's actions.

Specifically, Plaintiff has not provided competent evidence from which the Court could determine that the crash would not have occurred had Comptroller Thomas acted differently. The most that Plaintiff offers are speculative possibilities about what could have occurred. But the "mere possibility" that Defendant's actions were the cause in fact of the accident "is not enough; and when the matter 'remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.'" Giles, 926 S.E.2d at 328 (internal citation omitted); see also Hinson 927 F.3d at 1115 (speculation and conjecture do not establish genuine dispute of material fact).

## CONCLUSION

Decedent's death is a an incredibly sad tragedy. But "the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence." Giles, 926 S.E.2d at 328 (quoting Wilson v. Guy, 848 S.E.2d 138, 141 (Ga. Ct. App. 2020)). Because Plaintiff has failed to establish a genuine dispute of material fact as to the essential element of factual causation, her negligence claim fails. Thus, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 233.) The Court **DIRECTS** the Clerk of Court to enter judgment in Defendant's favor and **CLOSE** this case.

**SO ORDERED**, this 14th day of September, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA